We'll hear that one. May it please the Court, Counsel. My name is George Bruges. I represent Mr. Schrum. He's here with his wife in court. An average person can understand that if you breathe in a lot of dust, you're going to have a hard time breathing and it's going to make you cough. And the District Court made a mistake by saying that the average person can't understand that. I'd like to talk a little bit about the FELA. This is the 100th anniversary of the FELA. It was passed in 1908. As the Supreme Court said in Rogers v. Moe-Packin, that this Court has repeated, that Congress was dissatisfied that the railroads were not taking responsibility for the injuries that they caused to their employees. In Rogers, and this Court has said many times, that federal courts must be vigilant to protect the rights of injured railroad workers to have a jury trial when there's a claim under the Federal Employers' Liability Act. And this Court has reversed many times where District Courts have improvidently given the railroad summary judgment in FELA cases. So the evidence here was pretty clear. Mr. Schrum's job was to switch railroad cars and he would back up a hopper car so that it was underneath a chute and then the chute would dump lime dust, lime, into the car. The car is about two stories tall and about 50 feet long. And what he would do is the engineer could be a half a mile or a mile away at the other end of the train pushing it in and his job was to walk alongside the last car to line it up under the chute and talk on the radio telling the engineer, you know, 10 cars, 5 cars, 3 cars, stop, that'll do. He couldn't wear a mask because the engineer couldn't hear him if he had a mask on. All the other employees that were working in the dust around him for the lime company had masks on, respirators. He started working at the railroad in 1994. He was 23 years old. I take it we've read your brief and you're telling us things that we know. I take it what you're telling us is that it isn't necessary to have a physician to connect up causation, that the jury can logically come to that conclusion because his asthma is different now than it was before by his testimony. Yes. And the district court said, no, you really can't do that, that you have to have some couldn't give that evidence. If the doctors examining the patient can't come to a conclusion as to causation, why would we conclude the 12 jurors with no medical background at all could come to a conclusion that the doctors couldn't? It's not that the doctors couldn't, but the doctors were asked, Dr. Lindsay in particular was asked, if you have an opinion with a reasonable degree of medical certainty that his exposure to dust at the lime plant caused the aggravation of his asthma. And what Dr. Lindsay said, he thought it did, but he had, it depends if you're looking at the evidence in a light most favorable to the movement or light most favorable to the railroad. Well, there is no medical evidence of any causation. That's true? That's true. And the doctors who testified were asked the question and couldn't answer the question. So what you're saying is that even though the medical doctors who were called, who examined couldn't give the connection of causation, we can trust a jury to use logic. And that's the problem that I think the district court was having with your argument. How do you respond to that? I respond to it in a way that if you look at Dr. Lindsay's testimony in a light most favorable to Mr. Shrum, that he did say that the dust aggravated his asthma. If you look at Dr. Curry's testimony, who is the chief medical officer, he said that if you, the MS, he laid a foundation for the material safety data sheet and said that the material safety data sheet says that dust will aggravate asthma and that it was the local officials to provide respirators for the employees if they're going to work in lime dusty conditions. Mr. Shrum testified that when he worked out there, his lungs hurt and he immediately complained to railroad management that he needed a respirator. And their own expert said it. Their own expert, Dr. Fernando, said that. What type of an expert was Mr. Berg? He was an OSHA man, a safety man. He was a liability expert. He wasn't a doctor? No, he's not a doctor. So the doctors then were the ones who could not identify the connection. How does Mr. Berg, what did Mr. Berg say? Mr. Berg said that based upon the plaintiff's description of the conditions at the lime company that there's 18 inches of dust on the ground, that the pneumatic brakes are downspouted, that kicks up dust. It's like working in a variable blizzard of lime dust. That this is a violation of basic safety law, OSHA law, FRA regulations, the Burlington Northern Zone safety rules, because you have to provide proper personal protective equipment if you're going to have someone. What did he, he didn't testify the cause of it. He was testifying the liability aspect. Yes. He said that exposure, it's well recognized in industrial and safety fields that exposure to lime dust will irritate the worker's lungs and that's why you have to give them a proper mask. And it wasn't done here. He said if he was the OSHA investigator who looked at this plant and looked at this, he would have referred him to the U.S. Attorney for Prosecution for making Mr. Schrum work under those conditions where everyone else had a respirator and he didn't and it caused them to become sick. But the injury here is not irritation of the lungs, it's aggravated asthma. And Mr. Berg, who was your only declared expert, goodness, pardon? In my original Rule 26 disclosures, I disclosed to Dr. Lindsey and I said that Dr. Lindsey will be giving opinion testimony in this case. I also got an extension from the district court to take Dr. Curry's deposition and said that Dr. Curry will be giving opinion testimony. So, you know, Mr. Berg was a retained expert. He was the only retained expert I had. But under 702, there's other, you know, expert testimony other than retained experts. And there was a lot of, you know, expert testimony in this case. What pages of the excerpt of record would you like us to look at specifically with regard to Drs. Lindsey and Curry? And what's the strongest evidence that you have from them? Yes. It's at expert plaintiff COR tab DE-99. Tab what? I'm sorry. DE-99. Tab DE-99 is page 186, 187, 188, 189. And that is Dr. Lindsey's testimony. And it really goes all the way through to 194 and up to page 108. So, you know, Dr. Lindsey isn't a lawyer. And so he was asked the questions. He equivocated a little bit. But if it's clear that if you read Dr. Lindsey's testimony, what he's saying, and especially if you look at it in a light most favorable to Mr. Shrum, what Dr. Lindsey is saying, yeah, it was clear that this guy was working in a dusty environment. He came in. He complained to me about the dusty environment. He said it made his lungs hurt. I listened to his lungs. They were loud and wheezy. So I took him off work. His lungs got better. And I gave him a restriction not to go back to work where you're exposed to these kind of toxic elements. And the railroad would not let him go back to work. So, I mean, you have a young guy who worked at the railroad for many years without a problem, was assigned to go work in this dusty environment at the lime company. I mean, it really was pretty severe. Immediately started asking his bosses for a respirator that he could use and still have a microphone so he could talk to his engineering guy to train in. And for a year, a year and a half, they did nothing until finally he went to the doctor and the doctor said, we can't work in those conditions. Your asthma is terrible. And took him off work and wouldn't let him go back to work. So, I mean, he lost his career at the railroad because of the conditions at the lime company. Is Dr. Lindsey an internist? He's a family practice. He bears the D.O.? Yes. He's an osteopathic, not a medical doctor. Right. Not a medical doctor. Well, I mean, he has the same privileges as a medical doctor. Don't they also, I mean, this is not in the record, but I think D.O.s receive essentially the same training as M.D.s these days. Same license. Yeah. The same license. The other thing is Dr. Fernando. And Dr. Fernando did the exact same analysis that Dr. Lindsey did, this concept of differential diagnosis, which is recognized as an effective means of proving medical causation. Dr. Fernando said, he looked at, is this, you know, adult respiratory distress syndrome? Is it reactive airway disease syndrome? No. Is this chemical or occupational asthma? No. This is an aggravation of the asthma that he had caused by dusty conditions, and a guy like Trump should not be working in dusty conditions. I mean, Dr. Fernando, their own expert, put all the pieces together. And I think sometimes it's better to look at what's not said as much as it is to look at what was said. Nobody said anything other than the dust causes fans problems. No one said anything other than the dust at the line company is what keeps them from working. They didn't restrict them from anything else. So I'd like to save a couple of minutes for rebuttal. You may do that. Yeah. Thank you. Thank you. Good morning, Your Honors, Mr. Bridges. May it please the Court, I represent Burlington Northern and Santa Fe Railroad and Chemical Lime Company of Arizona. And this certainly is more than just a dust can cause a cough case. It is, they are alleging that the coal and the lime dust at Chemical Lime Plant has caused Mr. Shrum aggravated asthma. Mr. Shrum started in 2002, and he didn't start experiencing any symptoms until 2001. I'm sorry, he started in 2000. Didn't start experiencing any symptoms until late 2001 or early 2002, and didn't first see the physician until February of 2002. It would be complete speculation to give this case to the jury where the medical doctors themselves and plaintiff's retained expert, Mr. Berg, cannot connect Mr. Shrum's aggravated asthma condition to any toxicity at the plant. My first question to you is, looking at the testimony of Dr. Lindsay and the others mentioned by plaintiff's counsel, in the light most favorable to him, why isn't there enough to go to a jury on the question whether this condition was the aggravating factor or a significant aggravating factor in making his asthma worse? Well, I think if you look at the Clark case. No, I'm asking about the evidence in this case. About the evidence in this case. I think there's also evidence that Mr. Shrum is engaged in rodeo activities, has hay fever, has allergies. This is all interesting for the jury, but my question to you is, looking at all of the evidence in the light most favorable to him, why isn't there enough to suggest that the significant aggravating factor was the work desk? Well, I think it's Mr. Lindsay's testimony himself. He himself said he was. He said that he was not an expert in the area and that he could not connect the exposure at the plant to Mr. Shrum's aggravated asthma. That's not all he said, though. He hadn't done any investigation at the plant. He said the question was, do you have an opinion with a reasonable degree of medical certainty whether this history of exposure to lime and coal dust aggravated Mr. Shrum's asthma? He says, I'm not an expert in this area. I'm not an occupational medicine specialist in this day and age. I have not expected the plant nor his working environment. And he said, similar to the Willis case, he sent Mr. Shrum to some specialists to see if there were some other conditions that he had, because he himself could not connect the exposure at the plant to the aggravated asthma. I have a, in the specific context of this kind of physical condition, I have a question about sort of common sense and how that plays in. We do have cases that say if you fall down and break your leg, you don't need a medical expert to say, you know, that was on the job and falling down broke the leg. This is not as easy as that. No. But the diagnosis of the causes for asthma's aggravation rely heavily, if not entirely, on patient history. And when, I have asthma, so, you know, you get the sheet and you write down, today I played with the dogs and I felt lousy afterwards. And so a lot of what the experts do is based entirely on what the person says. So why isn't this kind of case more akin to the common sense cases where the person's own self-report is the largest component of the diagnosis? I'm not sure that that's exactly true. And I understand your point, this is maybe a little bit more commonsensical, but it isn't just that he was breathing dust. He's claiming he was breathing coal and lime dust. And there certainly are standards for those. There are OSHA standards and there are standards by the Arizona Department of Environmental Quality. Well, I thought there was no question that he was actually breathing those things. I thought, on summary judgment at least, I thought the question was what effect they had on him. Well, I think there's some dust, but we don't know what the level of dust was. And in all the toxic tort cases that we look at, which are inhalation of any kind of chemical or dust, and those would be CLAR, the Nook case from the Southern District of New York, the Schmaltz case from the Northern District of Illinois, and the Wills case from the Second Circuit, all of those are more similar to this case where somebody is breathing in something and saying that they have been in a medical condition based on inhalation. And each one of those cases that they're calling toxic tort case required expert testimony from a medical physician linking the dosage or the exposure to the dust to the complained of condition. Your argument, as I understand it, is not based on the fact that Dr. Lindsay is a DO rather than an MD, but on the content of what he said, correct? Correct. Okay. Yes. I think a DO has certainly fine training, so it's not based on that. It's based really on the everyone that plaintiff has put forward. It's not Dr. Berg, Mr. Berg never visited the plant, he never did any testing. It's all based on anecdotal evidence. We do have one other person who was working at the plant also who said that, you know, he observed that there might have been some issues relating to dust, but as in the Willis case points out, he's not a medical doctor. Mr. Shrum is not a medical doctor. None of the people that have medical training are able to link the inhalation of dust or coal dust and lime dust to Mr. Shrum's aggravated asthma. There's also, as you know, this court can uphold summary judgment for any reason that they want, so it is possible to look back at the testimony that has been given and say that it doesn't come up to par with Rule 702, Federal Rules of Evidence 702 in the Doe-Bear case. That needs to be based on sufficient facts and data. It needs to be the product of reliable principles and methods. And here again you have absolutely no testing that was done at the plant. You have just Mr. Shrum's statement that there was coal dust on the ground and that there was some dust that would come into the air. Nobody's gone out to the plant to say that there was a virtual blizzard, as the plaintiff has alleged. So that evidence really doesn't exist except anecdotally. And again, there are no standards. On summary judgment we have to accept what he testified to as true, correct? That's correct. And yet he's not a medical doctor. So I still think he would need to link what he's preaching. Well, that's a separate question. But you're saying, well, there's no evidence that there was dust. But he said there was, and that's on summary judgment good enough, right? Yes, and I think we need to concede that there was definitely dust there. It's a line plant, and they load trucks and trains, and so I'm sure that there is some dust going on. And Arizona's a dusty place anyway. It's about 25 miles northwest of Tucson in the middle of the Sonoran Desert, so we're filled with dust in Arizona. But, again, I think that there needs to be expert testimony here linking the actual inhalation of coal dust and lime dust and what those levels are. Under Daubert that would be, I believe it's called the dosage, I don't know if I have the name right, dosage response theory that was talked about in some of the toxic tort cases. Also, if the court is inclined to say that circumstantial evidence is sufficient, again, you have Frank Berg, he's the OSHA expert, he admitted he could not establish causation. Dr. Lindsay said he couldn't rule out that allergies were the problem of the aggravated asthma. He admitted that he had made no investigation into the amount of the dust that was being breathed at the plant. Dr. Curry was unable to give any opinion regarding causation. The data sheets in the 1937 educational film simply say that mineral dust can cause damage and the toxic tort cases say can or could is not sufficient. You need to prove a link. Mr. Schramm's testimony, again, he's not a physician. The coworkers, they're not doctors either, and they submitted letters that were unsworn hearsay testimony and are essentially inadmissible. And then the history of the pulmonary and the cardiologist, the pulmonary physician and cardiologist were based on Dr. Lindsay's input to them. So basically there's really no evidence that he's been exposed to any unacceptable levels of lime dust or coal dust and there's no medical testimony to link his inhalation of any dust to his aggravated asthma. Unless this Court has any further questions. Aggravated asthma seems to me, on the record, the question is, is it idiosyncratic to the individual who claims that he's suffering from it? In other words, you need medical expert to say, as this particular individual under these circumstances, the asthma was aggravated. Correct? Correct. But again, you'd be giving a jury complete speculation. How does a jury, when the medical doctors can't even figure it out, how does the jury say, well, his asthma was this level here, and now it's this level from his anecdotal evidence? How does a jury come up with, without using complete speculation, based on no medical evidence to say, well, maybe it's a little bit worse? When you say anecdotal, are you talking about anecdotal to him or anecdotal to other people? Anecdotal to Mr. Schrodinger. Okay. All right. Thank you. Any other questions? I don't believe so. Thank you. I would just ask that this Court uphold summary judgment in favor of BNSF and Chemical Line. Thank you. Thank you. Mr. Crowley, you have some rebuttal time remaining. This is what's so frustrating about this case, is that if you listen to the tape of this and listen to the quotes that she just read from Dr. Lindsay's, those were half answers, and that's what the district court did. They looked at the half answers from Dr. Lindsay's testimony, and it's tab 99, page 197. The question was, and let me give you the half answer that helps me, that kind of puts this thing and clarifies it. The question, do you have an opinion with a reasonable degree of medical certainty whether this history of exposure to lime and coal dust aggravated Mr. Shrum's asthma? Here's my half answer. I think you're supposed to look at in summary judgment. There was obviously something that he was in contact with during that period of time that aggravated his asthmatic bronchitis condition. During the time that he worked, it seemed to exacerbate his asthmatic condition, and he was off work, his asthmatic condition improved. You're reading from what? I'm reading from Dr. Lindsay's deposition, tab 99, page 197. Tab 99, page 197. And I'm reading the exact same quote that counsel for the railroad just quoted to you, only she only quoted the half that was benefit to her. I read the other half of his answer that is in a light most favorable to Mr. Shrum. Now, the other, I think, misinformation was that there was a representation that he didn't have any problems until two or three years later. There's an e-mail in the record where in November of 2000, shortly after he started working at the dust company, that he sent an e-mail to his supervisor saying, I need a respirator that I can use at my microphone. So he had, you know, an immediate onset of this aggravation of his asthma after he started working at this lime company. Finally, counsel talked about this dose response. Well, dose response is an identifiable way, a recognized way of establishing medical causation, but so is differential diagnosis. And all the cases say in these kind of occupational illnesses that you can look at differential diagnosis if you don't have dose response or dose response is not appropriate. I don't think this would be an appropriate case for dose response. Dr. Fernando, their own expert, didn't think it was an appropriate analysis by dose response. He didn't do a dose response analysis. He did differential diagnosis, which is essentially the same thing that Dr. Lindsay did. Dr. Lindsay ruled out a cardiac condition for the shortness of breath. He ruled out any pulmonary cancer as shortness of breath. And he came up to the conclusion, as he says, during the time that he worked, the dust exacerbated his asthmatic condition. That's what the testimony was. So you don't, you know, you can't be locked into dose response, because you can use differential diagnosis to do the medical causation issue. Thank you very much. Thank you, counsel. We appreciate very much the arguments of both counsel. The case just argued is submitted.
judges: Wallace, Graber, Timlin